UNITED STATED DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

Oct 16 2020

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ s/ Julieo _____ DEPUTY

UNITED STATES OF AMERICA,
Plantiff (s),

vs.

CLEOTHA YOUNG,
Defendant.

Case No. 14-cr-1288-DMS
Hon. Judge Dana M. Sabraw

July 21, 2020

NUNC PRO TUNC
7/31/20

Reply and Amended MOTION AND MEMORANDUM
IN SUPPORT OF COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C§ 3582(c)(1)(A)(i)

Now comes movant Cleotha Young and hereby submits this amended motion and memorandum in support of Mr. Youngs' motion for a reduction in sentence pursuant to 18 U.S.C§ 3582(c)(1)(A)(i).

As modified by the First Step Act, the compassionate release statute allows courts to reduce sentences for "extraordinary and compelling" reasons.

FCI Lompoc, where Mr. Young is housed, is among the worst coronavirus hotspots in the nation. And it is the site of by far the largest COVID-19 outbreak at a BOP Facility. BOP repots that over 1,100 of the approximately 2,650 individuals collectively incarcerated at Lompoc have tested positive for COVID-19.[1] The cases at Lompoc accout for about two-thirds of cases in Santa Barbara County and are so staggering that local officials are asking the State of California to allow them to exculde the numbers from Lompoc in Their reopening criteria.[2]

---

1 Bureau of Prisons, COVID-19 Update,https://www.bop.gov/coronavirus/

2 Delaney Smith, Santa Barbara County Urges State to Exclude Lompoc Prison Cases From Reopening Criteria, Santa Barbara Independent, May 11, 2020, https://www.independent.com/2020/05/11/santa-barbara-county-urges-state-to-exclude-lompoc-prison-cases-from-reopening-critera/.

page 1

The spread of the disease in correctional facilities threatens not only the health and well-being of inmates but also correctional facility staff and their families and the surrounding communities. Public health experts consistantly recommend de-carceration as an effective strategy to save more lives. According to a recent study conducted by the American Civil Liberties Union and researchers at Washington State University, University of Pennsylvania, and University of Tennessee, models estimating the numberor deaths due to the COVID-19 pandemic have failed to account for an additional 100,000 more deaths than previously thought, due to systemic failures by courts across the country to reduce inmate populations.[3]

Because the conditions of confinement at BOP facilities-and Lompoc in particular- Mr. YOungs' risk of another exposure to COVID-19 and possible death, he can establish "extraordinary and compelling" reasons justifying a reduction in sentence.

Mr. Young was arrested on April 24, 2014. He has served over six years in federal custody. He askes the court to impose a reduced sentence of time-served and place him on home confinement as a condition of supervised release. Mr. Young has an address to reside in North Dakota, with family support. By modifying the remaining prison sentence to a period of home confinement, the Court can allow Mr. Young to protect himself and others from the spread of COVID-19.

Mr. Young submitted a compassionate release request to the warden of Lompoc which was denied. Because he has exhausted administrative remedies, this Court

---

[3] American Civil Liberties Union, COVID-19 Model Finds Nearly 100,000 more deaths than Current Estimates Due to Failures to Reduce Jails, (April 22,2020), available at:https://www.aclu.org/sites/default/files/field document/aclu_covid19-jail-report 2020-8

is empowered to adjudicate the merits of Mr. Youngs' motion for a reduced sentece.

## 1. BACKGROUND

On Noverber 24, 2015 this Court sentenced Mr. YOung to serve 240 months in custody with five years of supervised release for a marijuana conspiracy. He has been in custody since his arrest on April 24,2020, and has served over six yearsof his sentence.

While serving his custodial sentence at Lompoc, Mr. Young- who is 42 years old with no health issues except having contracted COVID-19 and experiencing shortness of breath over the last three months. Mr. Young has completed numerous educational/vocatonal programs. See Exhibit A-1. Mr. Young is in a low-security setting with open dormitory, barrack-style housing conditions that make it impossible for him to exercise proper social distancing to comply with CDC guidlines. Mr. Young requested a reduction in sentence from the warden of Lompoc based on concerns about COVID-19. On May 25,2020 Mr. Youngs' request was denied by the warden due to a lapse of 30 days without a response. See Exhibit A-2.

On June 19,2020 Mr. Young filed his pro se motion for compassionate release with this Court. Movant is a non-violet drug offender, has family support and a stable residence waiting for him in North Dakota. Mr. Young seeks a safe enviornment where he can shelter in place and practice social distancing. He plans to work with his brother in the trucking industry.

## II STATUTORY AUTHORITY

Title 18, United States Code§3582(c)(1)(A)(i) allows a court to reduce an inmates's sentence if the court finds that (1)"extraordinary and compelling reasons" warrant a reduction, (2)the reduction would be "consistent with any applicable policy statements issued by the Sentencing Comission," and (3) the applicable sentence factors under §3553(a) warrant a reduction. Congress has

not defined the term "extraordinary and compelling," but the Sentencing Commission ("Commission") has issued a policy statement defining the term. The policy statement lists three specific examples of "extraordinary and compelling reasons" none of which apply to Mr. Young. The policy statement also provides a fourth "catchall" provision if the Director of the BOP determins that "there exists in the defendant's case an extraordinary and compelling reason other than, or in combinationwith, the reasons described." U.S.S.G§1B1.13,cmt.n.1(D).

III. **ARGUMENT**

A. The Court has the authority to consider Mr. Youngs' motion because more than 30days have elapsed since his request was received by the warden.

Although the comopassionate release statute previously permitted sentence reductions only upon motion of the Director of the BOP, Congress expanded the statute in the First Step Act of 2018. Pub. L.No. 115-391,§603(b), 132 Stat. 5194,5239 (Dec. 21,2018). As amended, §3582(c)(1)(A)(i) now permits courts to consider motions filed by the defendant so long as "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier".

In this case, the timing provision has been satisfied. Mr. Young submitted a request for reduction in sentence to the warden of his BOP facility, which was considered denied on May 25,2020. Because the paper request seems to have been lost in the prison mail system Mr. Young submitted another request on June 27,2020

and that request was considered denied July 27,2020. See Exhibit
A-2. This occurred more than 30 days ago and therfore provides
for the Court to consider Mr. Youngs' motion. See United States v.
Joling, 2020 WL 1903280, *2(D.Or.April 17,2020)(quoting Brown v.
United States, 411 F.Supp. 3d 446, 452 (S.D. Iowa 2019)("Exhaustion
occurs when the BOP denies a defendant's application or lets thirty
days pass without responding to it."))

The fact that Mr. Young may not have commenced an admini-
strative appeal of the warden's denial is irrelevant. See United
States v. Alam,---F.3d---,2020 WL 2845694, at *3(6th Cir. June
2,2020)("Prisoners who seek compassionate release have the option
to take their claim to federal court within 30days, no matter the
administrative appeals available to them.") Therefore, Mr. Youngs'
motion is ripe for review on the merits.

B. **This Court is empowered to determine what constitutes**
    **"extraordinary and compelling circumstances to justify**
    **a reduction in sentence.**

In 28 U.S.C. §994(t), Congress delegated to the Sentencing
Commission authority to "described what should be considered ex-
ordinary and compelling reasons for sentence reduction, including
the criteria to be applied and a list of specific examples."
The policy statement issued in exercise of that authority, U.S.S.C
§1B1.13,provides examples of "extraordinary and compelling reasons"
only in the application notes. The examples generally fall into
four categories based on a defendant's (1) terminal illness,
(2) debilitating physical or mental health condition, (3) ad-
vanced age and deteriorating health combined with the amount of
time served, or (4) compelling family circumstances. See

(3) advanced age and deteriorating health combined with the amount of time served, or (4) compelling family circumstances. see U.S.S.G.§1B1.13 cmt. n.1(A)-(C). The commentary also includes a fith catch-all provision for "extraordinary and compelling reasons other than, or in combination with, the reasons described in sub-divisions (A) through (C)" as determined by the Director of the Bureau or Prisons. Id. at cmt. n.1(D).

However, the policy statement was last amended in Novermber 2018, before the First Step Act was passed, and it still requires a motion filed by the BOP. The First Step Act, however, "significantly altered the landscape of compassionate-release motions". United States v. Rodriguesz, 2020 WL 1621331,at *4(E.D. Pa. Apr. 1, 2020).

Because the Commission has not updated its policy statement to account for the changes imposed by the First Step Act, the policy statement is now clearly ourdated. For that reason, district courts around the country have held that, in the absence of applicable policy statements, courts "can determine whether any extraordinary and compelling reasons other than those delineated in [U.S.S.G§1B1.13] warrant" sentence modification. See United States v Brown, 411 F.Supp.3d 446,449(S.D. Iowa Oct. 8, 2019).

These courts have held that the First Step Act's amendments demonstrate that the existing policy statement no longer "complies with the congressional mandate that the policy statement must provide guidance on the appropriate use of

sentence-modification provisions under section 3582". See United
States v. Cantu, 423 F.Supp.3d 345,349 (S.D. Tex. June 17,2020)
(emphasis added).

Further, because Congress enabled incarcerated persons to file
"direct motions to district courts" for sentence modification in
part to "increase the use of compassionate release", the "only
way" to give force to that command is to allow district judges to
consider the vast variety of circimstances that may constitute
extraordinay and compelling". Brown, 411 F.Supp. 3.d at 451. See
also United States v. Redd, 2020 WL 1248493, at*7(E.D.Va. March
16,2020)(citing cases). In Redd, the court explained that
Application Note 1(D)'s prefatory language, which requires a
determination by the BOP Director, is in substance, part and parcel
of the eliminated requirement that relief must be sought by the
BOP Director in the first instance." Id. at*7.

Though the BOP's criteria leave it little room to move for
a deduction based on COVID-19 vulnerability, a number of courts
have also concluded that releasing inmates who are especially
vulnerability to voronavirus is consistent with  the criteria in
U.S.S.G§ 1B1.13. Those orders that weigh COVID-19 vulnerability
in the compassionate-release calculus include the following:
Miller v. United States, 2020 WL 1814084, at *1,4 (E.D. Mich.
Apr. 9, 2020); United States  v. Colvin, 2020 WL 1613943, at *3-4
(D. Conn. Apr. 2,2020); United States v. Resnick, 2020 WL 1651508
at *7 (S.D.N.Y. Apr. 2,2020); United States . Gonzalez, 2020 WL
1536155, at *2-3 (E.D. Wash. Mar. 31, 2020); United States v.

Muniz, 2020 WL 1540325, at *2 (S.D. Tex. Mar. 30,2020); United
States v. Powell, 2020 WL 1698194, at *1 (D.D.C. Mar. 28,2020);
United States v. Campagna, 2020 WL 1489829, at *1,2 (S.D.N.Y.
Mar. 27,2020

Even where courts have not deemed §1B1.13 entirely inapp-
licable due to the lack of amendment, they have held that judges
have authority based on the catch-all provision in Application
Note 1(D) which implicitly recognizes that other "compelling
reasons" could exist aside from what is listed. See United States
v.Urkevich, 2019 WL 6037391, at *3 (D.Neb. Nov. 14, 2019)(noting
that §1B1.13 never "suggest that its list of criteria is exclusive"
; United States v. Beck, 425 F.Supp. 3d 537,582 (M.D.N.C. June
28, 2019)(Read as a whole, the application notes suggest a flex-
able approach... and recognize that the examples listed in the
application note do not capture all exraordinary and compelling
circimstances").

The government conceded this point in Young, agreeing that
"the dependence on the BOP to determine the existence of extr-
ordinary and compelling reason, like the requirement for a motion
by the BOP Director, is a relic of the prior procedure that is
inconsistent with the amendments implemented by the First Step
Act." United States v. Young,2020 WL 1047815, at *6(M.D. Tenn.
Mar. 4,2020). The court in Young followed the majority of district
courts in recognizing that §1B1.13's defined categories are not
exclusive: "In short, dederal judges are no longer constrained
by the BOP Director's determinastion of what constitutes extra-

page 8

ordinary and compelling reasons for a sentence reduction. Id. [4]
See also United Statese v. Perez, 2020 WL 1180719, at *2 (D.Kan.
Mar. 11,2020)("[A] majority of federal district courts have found
that the most natural reading of the amended §3582(c) and §944(t)
is that the district court assumes the same discretion as the BOP
director when it considers a compassionate release motion properly
before it ").

Here, this Court has discretion to assess whether Mr. Young
presents "extraordinary and compelling reasons" for his release,
regardless whether they fall within or outside of those listed in
the non-exclusive criteria of subsections (A)-(C) of the old
policy statement.

## C. COVID-19 is an unprecedented and rapidly expanding global health emergency that presents a serious risk to vulnerable prisoners,including Mr. Young.

---

[4] See also United States v. O'Bryan, 2020 WL 869475, at*2 (D.Kan.
Feb. 21,2020); United States v.Maumau, 2020 WL 806121, at *2-3
(D.Utah Feb. 18,2020)("[A] majority of district courts to con-
sider the question have embraced Mr. Maumau's positon" that
limiting the catch-all provision to circimstances identified by
the BOP is inconsistent with the law)(citing ten other cases);
Brown, 411 F.Supp. 3d at 451 ("[I]f the First Step Act is to in-
crease the use of compassionate release, the most natural reading
of the amended §3582(c) and §994(t) is that the district court
assumes the same discretion as the BOP Director when it considers
a compassionate release motion properly before it... Thus, the
Director's prior interpretation of 'extraordinary anc compelling'
reasons is informative, but not dispositive."); United States v.
Beck, 2019 WL 2716505, at *6(M.D.N.C. June 28, 2019)("While the
old policy statement provides helpful guidance, it does not con-
strain the Court's independent assessment of whether 'extraordinay
and compelling reasons' warrant a sentence reduction under
§3582(c)(1)(A)(i).")

**1. The conditions of confinement at federal correctional facilities prevent control of COVID-19.**

The coronavirus responsible for COVID-19 is incredibly infectious. It survives on surfaces for days. [5] But its real danger is described in a single word: aerosol. Unlike many diseases, "the Virus can remain viable and infectious in aerolsols for hours" - just breathing will spread the virus, no cough or sneeze required. [6]

Prison officials are powerless to reduce breathing, coughing sneezing, or movement in the cramped, shared spaces of prisons-the phones, showers, the legal libraries. Just as it spreads easily in the most controlled enviornments, such as hospitals, the virus spreads easily in the least prepared, prisons.

The fact that Mr. Young has so far survived being infected by COVID-19, see(Exhibit A-3) dose not and Should not prevent the court from granting a request for compassionate release. The long-term effects of infection are uncertain-- it is uncertian whether infection will cause additional health problems in the short-term, whether infection confers immunity from re-infection and whether those infected will require long-term care. On July 21, 2020 Mr. Young was screened for asmtha due to his continued problems with shortness of breath and weasing ever since he contracted COVID-19. He is currently taking an asthma medicine "Albuterol Inhaler HFA". See Exhibit A-4. In addition, Movant suffered and continues to suffer significant psychological trama

---

[5] Mary Van Beusekom, U.S studies offer clues to COVID-19 swift spread, severity, Cntr. for Infectious Disease Research & Policy (Mar. 18, 2020) (available at: https://bit.ly/3b9fk70).

[6] See id.

from awaiting infection, being infected, and dealing with the after effects of infection.

   2. **Courts responding to the COVID-19 pandemic have recognized the critical importance of reducing incarcerated populations including the release of inmates who have no previous underlying health issues like Mr. Young.**

FCI Lompoc has utterly abandoned its responsibilty to protect inmates like Mr. Young. Despite assurances by BOP that they have matters under control-- including in statements to members of Congress in Senate hearings-- this is clearly not the case. FCI Lompoc was already overpopulated, contributing to the nearly universal infection rate in prison. Already the subject of at least one lawsit for the conditions leading to these astronomical infection rates.[7]

The federal judiciary's response to COVID-19 reflects the extreme exigency of the present circumstances, including for inmates like Mr. Young who do not suffer from privous underlying health conditions. Based on the epidemic, district courts have granted various forms of relief, including compassionate release in an effort to "flatten the curve." See, e.g., United States v. Le, --- F.Supp. 3d---, 2020 WL 2563181 (D. Mass. May 6, 2020) (releasing pretrial defendant in drug trafficking case in light if COVID-19 even though he lacks "physical conditions that put him at high risk" from COVID-19 because "[t]he reduction in the prison population in and of itself" is important to combatting

---

[7] See generally, Complaint--Class Action for Declaratory Relief and Injuctive Relief and Petition for Writ of Habeas Corpus, Carror Tores v. Milusnic, 2:20-CV-04450-CBM-PVC(C.D. Cal. May 16,2020)

page 11

the virus); United States v. Kelly, 2020 WL2104241 (S.D. Miss May 1, 2020)(granting compassionate release to and individual in his late 20s without health issues where BOP failed to control the outbreak of COVID-19 at his facility); United States .v Chestnut, No.09-cr-06071-DGL-MWP, Dckt. 922 (S.D. Fla. Apr. 13, 2020)(recommending to BOP that the defendant serve his remaining sentence on home confinement where the defendant was in his late 30s and did not claim to suffer from any health issues that increased his risk of illness from COVID-19); United States v. Bolston, No.18-cr-00382-MLB, Dckt. 16-20 (N.D. Ga. Mar. 30, 2020) (releasing defendant who had previously been detained on a violation of supervised release, in part, because of the risk of exposure to COVID-19 while incarcerated despite the fact that the defendant had not alleged a particular health issue that made him more vulnerable to COVID-19; United States v. Harris, No.19-cr-00356, Dckt. 28-29, 35-36 (D.D.C. Mar. 27, 2020)(finding "exceptional reasons," in part, based on the COVID-19 pandemic, justified relief from the "mandatory" detention provision of 18 U.S.C. §3143(a)(2) and granting release pending sentence for a defendant who had been detained pretrial and pleaded guilty to distribution of child pornography even though the defendant did not allege any individual vulnerability to COVID-19) United States v. Garlock, 2020 WL 1439980, at *1 (N.D. Cal. Mar. 25 2020)(citing "chaos" inside federal prisons, including positive test for COVID-19, Quarantines, suspension of outside visitation, and restrictions on inmates movement and sua sponte extending

extending time to self-surrender until September 1, 2020" "[b]y
now it almost goes without saying that we should not be adding to
the prison population during the COVID-19 pandemic if it can be
avoided." United States v. Stephens, 2020 WL 1295155 (S.D.N.Y
Mar. 19, 2020)(releasing defendant who had previously been detained
for his alleged violation of supervised release in light of " the
unprecedented and extraordiany dangerous nature of the COVID-19
pandemic" and the heightened risk of contracting COVID-19 faced
by incarcerated individuals generally, even though the defendant
had not alleged any individual vulnerability to COVID-19 other
than his being incarcerated); United States v. Barkman, 2020 WL
1811343 (D. Nev. Mar. 17, 2020)(suspending the defendant's
intermittent confinement because of the resks of being incar-
cerated during the pandemic even though the defendant did not allege
that he fell within any particularly vulnerable age or health
class). This sampling of court orders granting release to inmates
with no previous underlying health issues based on the COVID-19
pandemic fails to convey the full volume of building precedent.

    **3. Mr. Young will not be a danger to the community if he is
released, and a sentence of time-served is sufficient,
but not greater than necessary, to accomplish the goals
sentencing.**

When extraordinary and compelling reasons are established,
the Court must consider the relevant sentencing factors in §
3553(a) to determine whether a sentece reduction is warranted.
18 U.S.C. §3582(c)(1)(A)(i). Under all of the circumstances in
this case, the Court should conclude that teh time that Mr. Young
has already served is sufficient to satisfy the purposes of

sentencing. Under Pepper v. United States, 562 U.S. 476, 490-93
(2011), the Court can, and indeed must, consider post-offense
developments under 18 U.S.C. §3553 (a).

Here, the orriding factor under §3553(a) that was not pre-
sent at the time of sentencing is the COVID-19 pandemic and the
serious risk it presents. Although the circimstances of the pre-
sent offense qualifed Mr. Young for the serious sentence this Court
originally imposed, the sentencing purpose of just punishment dose
not warrant a sentence that includes exposure to a life-threatning
illness. In fact, the Eighth Amendment's prohibition on cruel and
unusual punishment includes unreasonable exposure to dangerous
conditions in custody. Helling v. McKinney, 509 U.S. 25, 28 (1993);
see also Wallis v. Balswin, 70 F.3d 1074, 1076 (9th Cir. 1995)
(applying Helling to exposure to abestos); Brown v. Mitchell, 327
F. Supp. 2d 615, 650 (E.D. Va. July 28,2004)(applying Helling
to contagious diseases caused by overcrowding conditons). The §
3553(a) factors can be met in this case by an order of home
confinement as a condition of supervised release.

Additionally, Mr. Youngs conduct while incarcerated, es-
tablishes that the purposes of punishment have been met. Under
Pepper, the Court must also consider "the most up-to-date
picture" of the defendant's history and characterisitics, which
"sheds light on the likelihood that [the defendant]will engage
in future criminal conduct." 562 U.S. at 492. Over the past six
years in custody, Mr. Young has had no incidents in over five and
a half years. Mr. Young has shown by his conduct that he longer

threatens public safety, and that granting him compassionate release would not endanger the community.

If Mr. Yóung was sentenced today under the Fair Sentencing Act his sentence would be greatly reduced. The totality of the circumstances demosnstrate'that reducing Mr. Young sentece to time served after over six years in custody is sufficient, but not greater than necessary," to achieve the sentencing goals of §3553(a).

Mr. Young has a Release plan to ensure his safe transition to the community. He has strong family support, as well as a stable residence waiting for him in North Dakota.

**IV. CONCLUSION**

The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19- particularly at Lompoc where Mr. Young is currently housed as an inmate, and the fact that if Mr. Young was sentenced today his sentence would be greatly reduced- warrants compassionate release under 18 U.S.C. §3582(c)(1)(A).

DATED: This 27 th day of July, 2020

Respectfully submitted

Cleotha Young 4711129/8

CERTIFICATE OF SERVICE

I, Cleotha Young _____, hereby certify that I have
served a true and correct copy of;

Reply and Amended motion and Memorandum
In Support of Compassionate Release Pursuant
to 3582 (c)(1)(A)(i)

[which is considered filed/served at the moment it was delivered
to prison authorities for mailing as provided for in Houston v.
Lack, 487 U.S. 266, 101 L.Ed.2d 245 (1988)] to the following
listed parties/persons by placing a complete copy of the above
described materials in a sealed envelope affixed with the
appropriate pre-paid first-class United States postage:

Clerk of the Court
333 W. Broadway Suite 420
San Diego, CA 92101

and deposited same with prison officials here at the Federal
Correctional Institution in Lompoc, California, on this the
28 day of July _____, 20 20 .

Pursuant to Title 28, United States Code section 1746, I
declare under penalty of perjury that the foregoing is true and
correct. Executed this the 28th day of July _____, 20 20 .

(Signature) _____
Printed Name: Cleotha Young
Federal Register # 47111-298
Federal Correctional Institution (Low)
3600 Guard Road, Lompoc, CA 93436-2705
No Telephone/Fax/E-Mail Available

Exhibit

A-1



**Individualized Reentry Plan - Program Review (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: YOUNG, CLEOTHA 47111-298

SEQUENCE: 01889926
Team Date: 09-04-2019

| | | | | |
|---|---|---|---|---|
| Facility: | LOF LOMPOC FCI | | Proj. Rel. Date: | 09-27-2031 |
| Name: | YOUNG, CLEOTHA | | Proj. Rel. Mthd: | GCT REL |
| Register No.: | **47111-298** | | DNA Status: | SDC15421 / 04-24-2014 |
| Age: | 41 | | | |
| Date of Birth: | 07-11-1978 | | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LOF | ORD A D/W | ORDERLY A D/W | 09-28-2018 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| LOF | ESL HAS | ENGLISH PROFICIENT | 06-25-2014 |
| LOF | GED HAS | COMPLETED GED OR HS DIPLOMA | 06-25-2014 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| LOF | C | BEGINNING GUITAR | 04-25-2019 | 06-27-2019 |
| LOF | C | BEGINNING KILN OPERATION | 04-28-2019 | 05-03-2019 |
| LOF | C | 7 HABITS | 08-14-2018 | 10-16-2018 |
| BIG | C | 6HR TRAINING CLASS COACH/UMP | 03-16-2017 | 04-02-2017 |
| BIG | C | 1ST SECTION BASIC COMPUTER AM | 10-25-2016 | 04-06-2017 |
| BIG | C | PARENTING | 10-18-2016 | 11-15-2016 |
| BIG | C | RPP 6 VICTIM IMPACT | 09-06-2016 | 11-10-2016 |
| BIG | C | ACE INVESTING 1 | 06-29-2016 | 08-17-2016 |
| BIG | C | NUTRIONAL & EXERCISE NEEDS | 03-20-2016 | 04-19-2016 |
| BIG | C | HEATING AND AIR COND ONE | 02-04-2016 | 05-04-2016 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| *** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 01-22-2015 |
| CARE1-MH | CARE1-MENTAL HEALTH | 01-29-2016 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 10-28-2014 |
| YES F/S | CLEARED FOR FOOD SERVICE | 10-28-2014 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 05-17-2016 |
| ED COMP | DRUG EDUCATION COMPLETE | 06-08-2016 |

## FRP Details

| Most Recent Payment Plan | | | | |
|---|---|---|---|---|
| **FRP Assignment:** | **COMPLT** | **FINANC RESP-COMPLETED** | **Start: 03-12-2016** | |
| Inmate Decision: | **AGREED** | $50.00 | Frequency: **MONTHLY** | |
| Payments past 6 months: | **$0.00** | | Obligation Balance: **$0.00** | |

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |



Exhibit A - 1

Exhibit
A-2

-------------------------------------------------------------------------------------------------------

FROM: 47111298
TO: AW Operations
SUBJECT: ***Request to Staff*** YOUNG, CLEOTHA, Reg# 47111298, LOF-G-A
DATE: 06/27/2020 03:18:30 PM

To: warden
Inmate Work Assignment: am orderly

This message is concerning my request for compassionate release. Submitted a paper cop out 4-25-2020 requesting to be screened for compassionate release. i never herd anything back from that copout. i talked to you (the warden) when you did a walk through on 6-25-2020 in A-building G-House and asked was there any unanswered copouts on your desk and you told me no there wasn't. you had took down my number and said you would get back to me. i was wondering if you where able to locate that copout i submitted and if not can you please respond to this email as another request to be considered for compassionate release. thank you for you time.

Exhibit A-2

Exhibit

A-3

Ce 4

**WESTPAC LABS**

*A Sonic Healthcare Company*

**LABORATORY DIRECTOR:**
Ronald Rocha, M.D.

Patient: **YOUNG, CLEOTHA**
DOB: 07/11/1978   Age: 41        Sex: M
Pt Phone #:(___) ___-____
Med Rec #:  47111-298
Alternative ID:
Ref. Dr.: **NAVID SOUFERZADEH, M.D.**

Client #: **15255**
FCC LOMPOC
3901 KLEIN BLVD
LOMPOC , CA 93436

Accession: **20336292**
Collected: 05/05/2020 00:00
Received: 05/05/2020 23:59
Reported: 05/06/2020 12:33

| Procedure | Result | Abnormal | Range | Units |
|---|---|---|---|---|
| **MOLECULAR MICROBIOLOGY** | | | | |
| SARS-CoV-2, PCR | | **Positive** | Negative | |

**Source:** Nasopharyngeal

Positive results are indicative of the presence of SARS-CoV-2 RNA; clinical correlation with patient history and other diagnostic information is necessary to determine patient infection status. Positive results do not rule out bacterial infection or co-infection with other viruses. Positive and negative predictive values of testing are highly dependent on prevalence. False positive test results are more likely when prevalence is moderate to low.

The SARS-CoV-2 test is intended for the qualitative detection of nucleic acids from SARS-CoV-2 in nasopharyngeal and oropharyngeal swab samples from patients who meet COVID-19 clinical and/or epidemiological criteria. Testing methodology is real-time RT-PCR. The assay targets the ORF1/a and the E-gene. If received as separate collection devices, nasopharyngeal and oro-pharyngeal specimens are combined for analysis.

Test results must be correlated with clinical presentation and evaluated in the context of other laboratory and epidemiologic data. Test performance can be affected because the epidemiology and clinical spectrum of infection caused by SARS-CoV-2 is not fully understood. For example, the optimum types of specimens to collect and when during the course of infection these specimens are most likely to contain detectable viral RNA may not be known.

This test has not been Food and Drug Administration (FDA) cleared or approved and has been authorized by FDA under an Emergency Use Authorization (EUA). The test is only authorized for the duration of the declaration that circumstances exist justifying the authorization of emergency use of in vitro diagnostic tests for detection and/or diagnosis of SARS-CoV-2 under Section 564(b)(1) of the Act, 21 U.S.C. section 360bbb-3(b)(1), unless the authorization is terminated or revoked sooner. WestPac Labs are certified under the Clinical Laboratory Improvement Amendments of 1988 (CLIA), 42 U.S.C. section 263a, to perform high complexity tests.

COPY

Exhibit A-3

Testing is performed at the Santa Fe Springs location unless indicated.

**Santa Fe Springs:**
10200 Pioneer Blvd., Ste. 500
Santa Fe Springs, CA 90670
(562) 906-5227

**\*Newport Beach:**
361 Hospital Rd., Ste. 222
Newport Beach, CA 92663
(949) 548-7500

**Page 1 of 1
Final**

Legend for Corrected, Amended, or Addendum Reports:
**Corrected** Demographics changed   **Amended** Result Changed   **Addendum** Additional information added.



Exhibit

A-4

IVAX Pharmaceuticals Ireland

**LOMPOC FCC**                         LOF - G04-002U
3901 KLEIN BLVD - LOMPOC, California 93436
328669-LOX   Dhaliwal, Jaspal MD          07/21/20
YOUNG, CLEOTHA                        47111-298
**Shake well** Inhale 2 puffs by mouth four times a
day as needed for shortness of breath. -- **rinse
mouth after use**

**Albuterol Inhaler HFA (8.5 GM) 90 MCG/ACT**
(0) Refills   07/21/20  BDR    Refill Until: 08/20/20
#8.5 GM                Don't Confiscate Before: 10/19/20

CAUTION: Federal/State law prohibits transfer of this drug
to any person other than patient for whom prescribed.

Exhibit A-4

Otha `"`
al Correc...
O Guard Road
POC, CA 93436

CERTIFIED MAIL

7020 0640 0000 9977 1183

FOREVER / USA   FOREVER / USA   FOREVER / USA   FOREVER

FOREVER USA   FOREVER US   FOREVER

FOREVER USA   FOREVER USA   FOREVER USA

Legal Mail        Legal Mail

CLERK US DISTRICT COURT
JUL 3 1 2020
SOUTHERN DISTRICT OF CALIFORNIA
RECEIVED

To: Office of the Clerk
333 West Broadway Suite 420
San Diego, CA 92101